IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JULIA HUBBARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-380-X |
| | § | |
| DCG INC., d/b/a THE LODGE, | § | |
| JASON E. MONEY, SR., DAWN | § | |
| RIZOS, & CRAIG CLINT STIFF, | § | |
| JR., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On May 30, 2026, Defendant DCG Inc., doing business as The Lodge, and Defendant Dawn Rizos (collectively, the "Lodge Defendants") filed an Expedited Motion to Strike Plaintiff's Expert Disclosure and Designation. *See* Dkt. No. 50.

United States District Judge Brantley Starr referred the Motion to the undersigned United States magistrate judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b) and an order of reference. *See* Dkt. No. 51.

The Lodge Defendants ask the Court to strike or limit Plaintiff Julia Hubbard's expert Dr. Leslie Dobson or to compel production of additional materials. *See id.* at 11-12. The Lodge Defendants also ask the Court to abate their expert designation deadline, currently set for June 30, 2026, *see* Dkt. No. 49, until the Motion to Strike resolved, *see* Dkt. No. 50 at 12.

The Court ordered separate briefing on the Motion to Strike and the issue of whether the designation deadline should be abated.

Hubbard responded, *see* Dkt. No. 55, and the Lodge Defendants replied, *see* Dkt. No. 56.

## Background

Hubbard filed this lawsuit against the Lodge Defendants; Defendant Jason E. Money, Sr.; and Defendant Craig Clint Stiff, Jr., alleging that she was sexually assaulted by Money and Stiff, two customers of the Lodge. *See* Dkt. No. 1.

The Court entered a scheduling order stating that "[t]he party with the burden of proof on a claim shall file a designation of expert witnesses and comply with Fed. R. Civ. P. 26(a)(2) by March 31, 2026" and that "[r]ebuttal designation of expert witnesses and compliance with Fed. R. Civ. P. 26(a)(2) shall be made by April 30, 2026." Dkt. No. 42 at 1.

On March 31, 2026, Hubbard designation Dr. Dobson as an expert and served Dr. Dobson's report, curriculum vitae ("CV"), and case list to Defendants. *See* Dkt. No. 45.

On April 28, 2026, The Court extended the Lodge Defendants' deadline to designate their rebuttal expert to June 30, 2026. *See* Dkt. No. 49.

On May 30, 2026, the Lodge Defendants filed this emergency motion to strike Hubbard's designation of Dr. Dobson. *See* Dkt. No. 50. They contend that Hubbard's expert disclosure is deficient because Hubbard has not provided the underlying data that Dr. Dobson used to reach her conclusions. *See id.*

## Legal Standards

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony.

In addition to initial disclosures, "a party must disclose to the other parties the identity of any witness it may use at trial to present expert evidence." FED. R. CIV. P. 26(a)(2)(A).

"[I]f the witness is one retained or specially employed to provide expert testimony," "[t]he report must contain," among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B).

And Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

"In evaluating whether a violation of Rule 26 is harmless, the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. The court considers the four-factor test holistically. It does not mechanically count the number of factors that favor each side." *Fuller v. CIG Fin., LLC*, No. 3:22-cv-1289-D, 2023 WL 8482889, at *2-*3 (N.D. Tex. Dec. 7, 2023) (cleaned up).

The disclosing party bears the burden of proving that the failure to timely disclose was substantially justified or harmless. *See Lopez v. Fun Eats and Drinks, LLC*, No. 3:18-cv1091-X, 2021 WL 3502361, at *4 (N.D. Tex. July 16, 2021); *Coleman*

*v. Chevron Phillips Chem. Co. LP*, NO. CV H-23-350, 2024 WL 460248, at *9 (S.D. Tex. Feb. 6, 2024); *Fuller*, 2023 WL 8482889, at *3.

## Analysis

Rule 26(a)(2)(B)(ii) requires an expert report to contain "the facts or data considered by the witness in forming" her opinions. FED. R. CIV. P. 26(a)(2)(B)(ii); *accord Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) ("Rule 26(a)(2)(B) provides that when experts testify before a court, they must submit a report disclosing 'the data or other information' they have considered in reaching their conclusions." (quoting FED. R. CIV. P. 26(a)(2)(B)(ii))); *Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 484-85 (N.D. Tex. 2022) (finding a report contained "multiple deficiencies" under Rule 26(a)(2)(B)(ii)).

The Lodge Defendants argue that "[t]he Dobson Expert Report identifies four different tests that were given or performed upon Plaintiff [ ] which Dr. Dobson considered and relied upon to form her opinions, but none of these tests, interview notes, or 'available records' were provided to Defendants as part of the expert disclosures [ ] despite repeated requests." Dkt. No. 50 at 6. "Specifically, the Dobson Expert Report states Dr. Dobson administered GAD-7, PHQ-9, TSI-2, PAI, Life Events Checklist, and CAPS-5; relied on clinical interview; and reviewed records, but only the Dobson Expert Report, Dobson CV, and Dobson Case Lists were served." *Id.*

Dr. Dobson's report states:

In preparing this report, a comprehensive set of records was reviewed. These materials included the civil complaint, intake documentation, psychological testing data, and self-reported mental health history. The psychological testing records included standardized assessments

designed to measure symptoms of anxiety, depression, trauma-related distress, and personality functioning. The available materials provided information regarding Ms. Hubard's psychological symptoms, behavioral functioning, and current level of impairment.

Dkt. No. 50 at 18. The report includes a description of each source material. *See id.* at 18-20. And it lists the various standardized psychological tests that Dr. Dobson conduct and explains the results of each. *See id.* at 20-22.

And Dr. Dobson's declaration states:

The materials underlying my evaluation are the standardized instruments described above, Ms. Hubbard's test responses and the resulting scores and score reports, my clinical interview of Ms. Hubbard, and the records identified in my report. I am not withholding any other materials I considered or relied on in forming my opinions.

Dkt. No. 55-1 at 11.

The Lodge Defendants contend that, to date, they "have not received the underlying raw data, interview notes, 'available records' or other information relied upon, considered or utilized by Dr. Dobson to even convey the necessary information to allow an expert to provide a meaningful review, nor to allow The Lodge Defendants, or other Defendants, to conduct a meaningful cross-examination." Dkt. No. 50 at 7.

Hubbard does not dispute that the "raw testing data underlying the report have not been produced." Dkt. No. 55 at 4. Rather, Hubbard contends that the non-disclosure of such data is justified and harmless. *See id.*

The Court disagrees.

First, Hubbard fails to provide an adequate explanation for the non-disclosure.

Hubbard argues that "Dr. Dobson held the raw data pending appropriate protections because her license and professional obligations require her to keep

copyrighted test materials secure. Plaintiff explained as much and offered the data to the Lodge Defendants' qualified psychologist on May 7; and again this week, Plaintiff offered to confer expert to expert on specific terms, asking the Lodge Defendants to name their reviewing psychologist so the parties could set the conditions of the disclosure once that expert's qualifications were verified." Dkt. No. 55 at 11.

But the Lodge Defendants have been asking Hubbard to produce the underlying data since April 1, 2026 – the day after Hubbard designated Dr. Dobson. *See* Dkt. No. 50 at 55; *see also, e.g.*, Dkt. No. 50 at 46, 48, 52. And Hubbard failed to provide the Lodge Defendants with an adequate explanation for nondisclosure for several weeks, despite repeated requests for the information. *See* Dkt. No. 50 at 45-55. Even assuming Hubbard's proposed protocol is appropriate, Hubbard has not explained this delay. *See Wilson v. Home Depot U.S.A., Inc.*, No. 3:14-cv-5292-B, 2014 WL 1882024, at *3 (N.D. Tex. May 12, 2024) (Plaintiff "could have notified the Court of his inability to comply with the Rule and by the set deadline or otherwise sought assistance. However, he did no such thing.").

Hubbard herself admits that there is "no true privilege against discovery of trade secrets or other 'confidential' business information." Dkt. No. 55 at 13 (quoting *A.H. Robbins Co. v. Fadely*, 299 F.2d 557, 561 (5th Cir. 1962)). Again, Dr. Dobson's reservations do not justify Hubbard's counsel's attempts to dodge the Lodge Defendants' requests for over a month. *See Arnold v. City of San Antonio*, No. SA-07-CA-877-XR, 2009 WL 780671, at *3 (W.D. Tex. Mar. 24, 2009) ("A party may not

simply retain an expert and then make whatever disclosures the expert is willing or able to make notwithstanding the known requirements of Rule 26. The adverse party should not be placed at a disadvantage or be deprived of the full benefits of Rule 26 by the selection of an expert who cannot or will not make the required disclosures. The selection and retention of an expert witness is within the control of the party employing the expert. To the extent that there is a disadvantage created by the expert's failure to disclose it must be borne by the party retaining the expert witness." (quoting *Palmer v. Rhodes Machinery*, 187 F.R.D. 653, 657 (N.D. Okla. 1999)).

And, insofar as Hubbard seeks a protective order for the raw test data, she has not, at this stage, met her burden to establish that one is warranted. *See Keefer v. Erie Ins. Exch.*, No. 1:13-cv-1938 2014 WL 901123, at *6 (M.D. Pa. Mar. 7, 2014) (finding that expert's resistance to providing raw test data, "largely based on protecting the integrity of the examination methods and results," did "not warrant a protective order to prevent disclosure").

As to the second factor, the parties do not dispute that Dr. Dobson's testimony is important. But "'the importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders.' 'Moreover, the claimed importance of [Hubbard's] expert testimony merely underscores the need for [Hubbard] to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible.'" *Wilson*, 2014 WL 1882024, at *5 (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990), then quoting *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996)) (citations

- 7 -

omitted).

Third, the Lodge Defendants contend that, "[w]ithout the testing data sets, scoring protocols, raw item responses, interpretive outputs, interview notes, and records reviewed, [they] cannot adequately prepare for or conduct Dr. Dobson's deposition or challenge her methods, scoring accuracy, validity scales, or causation at hearing or trial." Dkt. No. 50 at 10.

And, so, the Lodge Defendants have been prejudiced by Hubbard's nondisclosure. *See Bell v. Texaco, Inc.*, 493 F. App'x 587, 593 (5th Cir. 2012) (per curiam) ("We consider whether the other party's preparation for trial was substantially prejudiced.") (cleaned up).

Fourth, Hubbard argues that a continuance could cure any prejudice to the Lodge Defendants. *See* Dkt. No. 55 at 11. The Court extended the discovery deadline to August 1, 2026. *See* Dkt. No. 49. But the parties appear to be at an impasse – the Lodge Defendants contend they cannot designate a rebuttal expert without the underlying data, and Hubbard refuses to disclose the underlying data to anyone except the Lodge Defendants' rebuttal expert. And, so, the Court is not convinced that a continuance would lead to a resolution. *See Wilson*, 2014 WL 1882024, at *5 ("[T]here is little indication that granting Plaintiff more time to comply with the Rule would be beneficial, especially when he has represented to the Court that materials from his experts 'must be propounded via issuance of a subpoena.'" (citations omitted)).

Considering the four factors holistically, the Court does not find Hubbard's

non-compliance with Rule 26 to be substantially justified or harmless.

## Conclusion

The Court GRANTS Defendant DCG Inc., doing business as The Lodge, and Defendant Dawn Rizos's Expedited Motion to Strike Plaintiff's Expert Disclosure and Designation [Dkt. No. 50].

SO ORDERED.

DATED: June 16, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE